# IN THE COURT OF APPEALS OF IOWA

No. 18-1487
Filed March 18, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ETHAN LANDON DAVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wayne County, Patrick W.
Greenwood, Judge.


        The defendant appeals from his convictions of assault causing bodily injury
and child endangerment.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant
Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney
General, for appellee.


        Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

Ethan Davis appeals from his convictions of assault causing bodily injury and child endangerment.[1]  Davis challenges the sufficiency of the evidence to support his child-endangerment conviction.  Specifically, he challenges whether the evidence establishes he "knowingly act[ed]" and whether those actions created a "substantial risk" to the child's physical, mental, or emotional health and safety.[2]  Davis also maintains he received ineffective assistance from trial counsel when counsel did not challenge the jury instruction on "substantial risk."[3]

## I.  Background Facts and Proceedings.

In November 2017, Davis was charged with burglary in the first degree, willful injury, and child endangerment.  He pled not guilty, and a jury trial took place in June 2018.

Shayla Stevens, Davis's former paramour with whom he shares a child, L.D., testified at trial.  According to Stevens, on the day after Thanksgiving in 2017, she was at her boyfriend Jarvis Kennebeck's house with eighteen-month-old L.D.  While Stevens was in the bathroom brushing her teeth, Kennebeck came in holding L.D. and alerted her Davis was there.  Soon after, Davis entered the home uninvited, brandishing a handgun.  Davis hit Kennebeck in the head with the gun

---

[1] The issues Davis raises on appeal only implicate his conviction of child endangerment.

[2] If we find any part of this issue has not been preserved for our review, Davis asks us to consider it under the framework of ineffective assistance.

[3] Davis raises ineffective assistance on direct appeal.  Because the judgment and sentence were entered before July 1, 2019, the amended Iowa Code section 814.7 (2019) does not preclude his ability to bring an ineffective-assistance claim on direct appeal.  *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019) ("On our review, we hold Iowa Code sections 814.6 and 814.7, as amended, do not apply to a direct appeal from a judgment and sentence entered before July 1, 2019.").

twice and then took L.D. from his arms. While holding L.D., Davis pointed the gun at Kennebeck and then Stevens before firing a round into the ceiling. Davis fled the home with L.D. Stevens chased after Davis to get the child from him, but Davis shoved her down and drove away. Stevens admitted that she was using marijuana and methamphetamine in November 2017 but denied using in the days before the incident or ever around L.D.

Kennebeck testified similarly. He said he was in his home holding L.D. when Davis barged in with a gun. Davis hit Kennebeck in the face twice with the 9 mm handgun before taking L.D. from him; "[a]s soon as [he] was coming back to, [Davis] fired a round off at the ceiling." L.D. started crying after Davis fired the gun. Davis took L.D. from the home and left the area.

Deputy Sheriff David Lewis testified that the police were called to Kennebeck's home that day. They saw and took photos of Kennebeck's face. According to Deputy Sheriff Lewis, "The circular pattern that's on Mr. Kennebeck's left temple area [was] consistent with the end of a barrel of a gun." Additionally, Deputy Sheriff Lewis confirmed they recovered a 9 mm shell casing from the kitchen floor and located and photographed a hole in the kitchen ceiling where the gun discharged.

Davis testified in his own defense. According to Davis, Stevens agreed Davis could have L.D. for part of Thanksgiving Day[4] but then did not respond to his attempts to reach her. Davis knew Stevens used illegal drugs with Kennebeck,

---

[4] Stevens and Davis did not have a court order establishing custody of L.D. or setting a parenting time schedule; the pair worked out between them who would care for L.D. and when.

and he was worried about L.D.'s safety. With this in mind, Davis drove past Kennebeck's home on the day after Thanksgiving. When he saw Stevens's vehicle there, he went to the door. From outside, Davis saw L.D. lying by himself on the floor with a pit bull running around him. Davis, with his gun holstered at his waist, went into the house and picked up L.D. Then Stevens and Kennebeck came out of the bathroom. Davis alleged that Stevens was holding a meth pipe. Kennebeck and Stevens came after him, with both pushing him while he held L.D. Only then did Davis draw the pistol. When Kennebeck came at him again, Davis hit him with it. Davis denied Kennebeck ever lost consciousness, saying, "[h]e's like a spring, up and down off the floor." Davis continued:

> And the third time [Stevens] tried to grab [L.D.] from me, I pulled the pistol, and I held it at both of them. And that's—they didn't want to stop. They just wanted to keep coming. They was out of their mind. That's when I let off the round in the ceiling, and then they laid back. The whole time the dog was running around me and chased me outside.
> And when I got in the Hummer, [Stevens] was there. She ran outside. She grabbed me a few times. I tried to push her back with my arm. I grabbed the Hummer door and tried to close it, and she was in the way. And this went on for maybe ten, fifteen seconds.
> And finally I let go of the Hummer door, and I thought she knocked herself out with it. She was yanking on it so hard, and she just went to the ground. That's when I left.

The jury acquitted Davis of robbery in the first degree but found him guilty of the lesser-included offense of assault causing bodily injury and of child endangerment. He was later sentenced to serve a one-year term and a two-year term, respectively, to be served consecutively.

Davis appeals.

**II. Discussion.**

**A. Sufficiency of the Evidence.** Davis challenges the sufficiency of the evidence to support his conviction for child endangerment. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013). In doing so, we look at the evidence in the record in the light most favorable to the State and make all inferences that can be fairly drawn in favor of the verdict. *Id.*

Here, to convict Davis of child endangerment, the State had the burden to prove:

> 1. On or about November 24, 2017, [Davis] was the parent of [L.D.]
> 2. [L.D.] was under the age of fourteen years.
> 3. [Davis] acted with knowledge that he was creating a substantial risk to [L.D.'s] physical, mental and/or emotional health or safety.

Davis challenges the third element. He argues there was insufficient evidence to establish he (1) created a substantial risk to L.D.'s physical, mental, or emotional health or safety and (2) acted with the knowledge his conduct created that risk.

Our supreme court has interpreted "substantial risk" to mean: "The very real possibility of danger to a child's physical, [mental, or emotional] health or safety." *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001). According to the testimony of Stevens and Kennebeck,[5] Kennebeck was holding the young child at the time Davis hit Kennebeck in the face multiple times with a loaded gun. This foray created endless possibilities of danger to this child. First, Davis could have missed

---

[5] In his appellate brief, Davis relies on his own testimony and ignores that of Stevens and Kennebeck. But as our standard is to review the evidence in the light most favorable to the State, we are not constrained by Davis's testimony.

Kennebeck and instead hit the child. Second, a risk existed for the loaded gun to discharge while Davis swung it around his child's head. Additionally, with Kennebeck's testimony that the hits to the head caused him to lose consciousness, there was a risk of Kennebeck dropping the child or that he might fall on top of the child. Finally, Davis's action of discharging the gun above his head, while he was holding L.D., posed a substantial risk to L.D., either due to the noise of the discharging gun near the child's head, possible ricochet of the bullet, or the chance the cartridge would cause part of the ceiling to dislodge onto Davis's and L.D.'s heads. Any of these were real possibilities, caused by Davis's actions, which put L.D.'s physical health or safety in danger. *See id.* at 232–33. ("[I]t [is] unnecessary to prove that the physical risk to a child's health or safety is likely. Rather a showing that the risk is real or articulable will suffice."). Additionally, Davis's assault of Kennebeck, witnessed by L.D., created a substantial risk of harm to L.D.'s emotional or mental health. *See, e.g.*, *State v. Lee*, No. 17-0413, 2018 WL 1099273, at *3 (Iowa Ct. App. Feb. 21, 2018) (concluding, where a child witnessed a violent altercation involving their parent, that "[e]ven without expert testimony, it is also reasonable for the jury to conclude there is a 'real or articulable' risk or a 'very real possibility of danger' to a child's mental, physical, or emotion health or safety").

Next, Davis challenges whether substantial evidence supports that he acted with knowledge he was creating a substantial risk to L.D. "[I]t is the appreciation of the risk to the child or minor posed by one's conduct that creates criminal culpability under this statute." *State v. Milsap*, 704 N.W.2d 426, 430 (Iowa 2005). Knowledge may be inferred from circumstances surrounding the action. *Id.*

Accepting his version, if Davis understood that the loose dog could pose a danger to the small child left unattended on the floor, it follows he should know that waving a loaded gun near the child's head, hitting the person holding the child in the head, and discharging a weapon above the child's head posed dangers to the child. When asked at trial if it was safe to discharge a gun while holding an eighteen-month-old child, Davis responded, "It wouldn't have been my first option, no." Thus, substantial evidence supports that Davis acted with knowledge that he was creating a substantial risk to L.D.'s physical, mental and/or emotional health or safety.

Alternatively, Davis argues that the third element the State had to prove, that Davis acted with knowledge that he was creating a substantial risk to L.D.'s physical, mental, and/or emotional health or safety, includes multiple theories of criminal liability. He argues the element is properly separated into two distinct theories: (1) risk to the physical health or safety of the child and (2) risk to the mental or emotional health or safety. He argues that there was insufficient evidence to support both theories, so the jury should not have been instructed on both, and since we cannot tell if the jury convicted him on a theory unsupported by sufficient evidence, we should remand for new trial on only the properly supported theory.

We find several issues with this alternative argument. First, the marshalling instruction did not break the third element down into two separate theories of the crime, and Davis did not object to the instruction. Even if Davis is correct that the jury should have been instructed as to two separate theories, the instruction as given is "the law of the case for purposes of our review of the record for sufficiency

of the evidence." *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). Thus, his argument on separate theories is not preserved for our review.

Recognizing this may be an issue impeding our direct review, Davis asks that we consider this under the framework of ineffective assistance of counsel, determining whether counsel breached a duty in failing to object to the instruction. But this claim fails for a couple reasons. First, Davis has provided no case law or authority to support his argument that the third element is a separate theory of liability for the crime of child endangerment. And, as the State points out, the legislature delineated multiple alternative ways to commit child endangerment, with the others separated into lettered paragraphs.[6] Without authority to support

---

[6] Iowa Code section 726.6 provides:

> 1. A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when the person does any of the following:
>
> a. Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.
>
> b. By an intentional act or series of intentional acts, uses unreasonable force, torture or cruelty that results in bodily injury, or that is intended to cause serious injury.
>
> c. By an intentional act or series of intentional acts, evidences unreasonable force, torture or cruelty which causes substantial mental or emotional harm to a child or minor.
>
> d. Willfully deprives a child or minor of necessary food, clothing, shelter, health care or supervision appropriate to the child or minor's age, when the person is reasonably able to make the necessary provisions and which deprivation substantially harms the child or minor's physical, mental or emotional health. For purposes of this paragraph, the failure to provide specific medical treatment shall not for that reason alone be considered willful deprivation of health care if the person can show that such treatment would conflict with the tenets and practice of a recognized religious denomination of which the person is an adherent or member. This exception does not in any manner restrict the right of an interested party to petition the court on behalf of the best interest of the child or minor.

that Iowa Code section 726.6(1)(a) includes alternative means to commit the crime, we will not say counsel breached an essential duty in failing to request a different instruction. *See State v. Liddell*, 672 N.W.2d 805, 814 (Iowa 2003) ("Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel." (citation omitted)). Moreover, Davis could not establish prejudice, as even if the third element should have been broken down into two alternative theories of liability, here, substantial evidence supports both.

**B. Ineffective Assistance: Jury Instruction.** Davis complains about the court's instruction to the jury following a question asking for a clarification of the term "substantial risk." After the jury requested a definition of "substantial risk," the

---

e. Knowingly permits the continuing physical or sexual abuse of a child or minor. However, it is an affirmative defense to this subsection if the person had a reasonable apprehension that any action to stop the continuing abuse would result in substantial bodily harm to the person or the child or minor.

f. Abandons the child or minor to fend for the child or minor's self, knowing that the child or minor is unable to do so.

g. Knowingly permits a child or minor to be present at a location where amphetamine, its salts, isomers, or salts of isomers, or methamphetamine, its salts, isomers, or salts of isomers, is manufactured in violation of section 124.401, subsection 1, or where a product is possessed in violation of section 124.401, subsection 4.

h. Knowingly allows a person custody or control of, or unsupervised access to a child or a minor after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A. However, this paragraph does not apply to a person who is a parent or guardian of a child or a minor, who is required to register as a sex offender, or to a person who is married to and living with a person required to register as a sex offender.

i. Knowingly provides direct supervision of a person under section 724.22, subsection 5, while intoxicated as provided under the conditions set out in section 321J.2, subsection 1, paragraph "a", "b", or "c."

court instructed the jury that the definition is "The very real possibility of danger to a child's physical, mental and/or emotional health or safety." The response tracks a definition our supreme court noted "enjoys a fairly ascertainable meaning." *Anspach*, 627 N.W.2d at 232. Davis did not object to the instruction at the time.

On appeal, Davis argues counsel provided ineffective assistance by failing to object, maintaining counsel should have argued that the definition of "substantial risk" includes a consideration of not only the probability of risked harm but also the magnitude or gravity of the harm. Davis recognizes that his proposed instruction conflicts with controlling case law. *See id.* at 233. That said we have no power to overrule precedent set by our supreme court. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Thus, the definition of "substantial risk" remains unchanged, and counsel had no duty to object to a proper jury instruction. This claim of ineffective assistance fails.

### III. Conclusion.

Because substantial evidence supports Davis's conviction of child endangerment and his claim of ineffective assistance fails, we affirm.

**AFFIRMED.**