**STATE of Iowa, Appellee,**

v.

**Edward Jerome ANSPACH, Jr., Appellant.**

**No. 00–0304.**

Supreme Court of Iowa.

May 31, 2001.

Thomas J. Clarke, Jr., of Isaacson & Clarke, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeffrey Noble and John Judish, Assistant County Attorneys, for appellee.

SNELL, Justice.

This is a case about a defendant who did several foolish things. Whether his imprudent actions amount to child endangerment is the question before us today. Our determination necessarily turns on the interpretation of a statute as it applies to the actions of the defendant as well as the constitutional implications of the statute. *See* Iowa Code § 726.6(1)(a) (1999). Because we agree with the district court that the defendant's actions constitute the crime of child endangerment, we affirm the district court's decision.

## I. Factual Background and Procedure

Edward Jerome Anspach, Jr. was stopped by police for speeding. He was traveling at a rate of fifty-three miles per hour in a thirty-five miles per hour zone. Police signaled by flashing lights for Anspach to stop. Police testimony indicated that rather than slow down and stop, Anspach actually sped up. Anspach then made two sharp turns onto a side street and then into an alley before finally coming to an abrupt stop. In his hastiness, Anspach left approximately thirty-foot skid marks on the road. When later asked by police why he did not immediately stop, Anspach told the officer he was losing his license in three days and did not want to get caught again. The weight of these facts indicate Anspach was trying to elude police.

Anspach was driving a truck containing several passengers. The open truck bed held two women, Ida and Carla Wallace. Police characterized the position of these women during the "chase" as one of "hanging on for dear life" "to keep from being thrown out." Anspach was reportedly taking Ida and Carla on errands.

The truck cab contained four small children—one was lying on the floor and three were sitting or lying on the seat. The ages of the children were one, two, two, and three. The youngest lay on the floor of the truck on top of garbage and debris, the two-year-olds were fastened with the same belt, and the three-year-old was completely unrestrained. No child was protected by a car seat or properly secured by a seat belt. The officer speculated that the children must have been thrown about in the cab when the car skidded around the corner and went into a slide before coming to rest in the alley. Ida was the mother of two of the children. Carla was babysitting the other two children for a friend. None of the children had a relationship with Anspach.

Anspach was immediately cited for four counts of failing to use a child restraint system under Des Moines City Ordinance section 27–446 (now section 114–446), failure to yield to an emergency vehicle, failure to have insurance, and speeding. *See* Iowa Code § 321.446 (providing the State counterpart to the safety seat ordinance). Anspach was later charged with four counts of child endangerment under Iowa Code section 726.6(1)(a), (3), which are aggravated misdemeanors. These new charges carried the threat of incarceration. Neither Ida nor Carla were charged with any misconduct for their part in this situation.

Prior to trial, Anspach made a motion to dismiss the child endangerment charges against him based on several constitutional arguments. This motion was denied. Anspach then waived his right to a jury and the case went to bench trial. Anspach was convicted on all counts and sentenced to four indeterminate terms of two years to be served concurrently. The court then suspended his sentence and placed him on probation for a period of twenty-four months. Anspach appeals this conviction.

On appeal, he makes three arguments: (1) Iowa Code section 726.6(1)(a) is unconstitutionally vague by its undefined "substantial risk" requirement because it does not reasonably give fair warning to those who fall under it and enables arbitrary enforcement; (2) Evidence was insufficient to show that Anspach committed acts constituting a substantial risk to the children's safety; and (3) Anspach was erroneously charged with child endangerment because he had no custody or control over the children.

## II. Scope and Standard of Review

 This case raises a constitutional vagueness issue for our review. *See* U.S. Const. amends. V, XIV; *see also State v. Osmundson*, 546 N.W.2d 907, 908–09 (Iowa 1996). We review constitutional claims de novo. *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997). As such, "we presume the statute is constitutional and 'give it any reasonable construction necessary to uphold it.'" *Id.* (quoting *State v. Hunter*, 550 N.W.2d 460, 462 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306 (Iowa 2000)). "This presumption places a heavy burden on one challenging the constitutionality of the statute." *Osmundson*, 546 N.W.2d at 909. Accordingly, a contender must destroy any reasonable basis for the statute to secure a reversal. *Wettach v. Iowa Bd. of Dental Exam'rs*, 524 N.W.2d 168, 171 (Iowa 1994).

 To the extent our review also requires us to interpret the meaning and scope of a particular statute, our review is for correction of errors at law. Iowa R.App. P. 4; *State v. Orozco*, 573 N.W.2d 22, 24 (Iowa 1997). "When reviewing such issues we are not bound by the trial court's determinations of law." *State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997). Where the defendant also challenges the sufficiency of the evidence to support his conviction under the statute, "we review the evidence to determine whether a rational trier of fact could have found the defendant guilty of the offense charged" beyond a reasonable doubt. *Id.* Thus, our review of all the evidence in the record is made in a light most favorable to the State. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997).

## III. Preservation of Error

 The State maintains that Anspach failed to preserve error on his claim that section 726.6(1)(a) cannot apply to him because of the custody and control requirement. Anspach alleges he was erroneously charged with child endangerment because he did not have custody or control over the children in this situation. This issue questions the meaning of the term control and suggests that Anspach's circumstances were insufficient to show control. Anspach does not phrase his argument in terms of a constitutional void for vagueness challenge. Rather, he maintains that his conduct cannot be defined as control. We choose to interpret this issue as a sufficiency of the evidence challenge. When such a claim is made on appeal from a criminal bench trial, error preservation is no barrier. *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997) (holding that "when a criminal case is tried to the court, a defendant may challenge the sufficiency of the evidence on appeal irrespective of whether a motion for judgment of acquittal was previously made").

## IV. Issues on Appeal

The child endangerment statute in question is provided below:

1. A person who is the parent, guardian, or person having custody or control over a child ... commits child endangerment when the person....

a. Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

. . . .

3. A person who commits child endangerment not resulting in serious injury to a child or minor is guilty of an aggravated misdemeanor.

Iowa Code § 726.6(1)(a), (3).

A. The Constitutionality of Section 726.6(1)(a)

■ We will only address the issue of vagueness as it applies to Anspach's circumstances. In this regard, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). Thus, we will "consider whether [the defendant's] conduct clearly falls within the proscription of the statute under any construction." *Hunter*, 550 N.W.2d at 465 (citation omitted). Further, we recognize:

> The degree of vagueness that the constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment. Thus, for example, a law interfering with the exercise of fundamental rights would be tested by a more stringent standard [than one that does not].

*Jim O. Inc. v. City of Cedar Rapids*, 587 N.W.2d 476, 478 (Iowa 1998) (citation omitted). The conduct at issue here is failing to abide by child restraint laws, exceeding the applicable speed limit, and attempting to evade police. Because Anspach has no legal right to engage in such conduct, no fundamental rights are implicated. As such, we will not employ the more stringent standard.

■ Anspach argues that the phrase "substantial risk" is vague because it is not capable of alerting the ordinary person to what type of conduct is implicated. Substantial risk is not defined in section 726.6. The phrase substantial risk, however, has been heavily defined in other contexts and enjoys a fairly ascertainable meaning. *See State v. Carter*, 602 N.W.2d 818, 821(Iowa 1999); *State v. Anderson*, 308 N.W.2d 42, 46–47 (Iowa 1981). Such analyses are helpful to our determination. For example,

> The specificity required of a statute need not be apparent on its face. We may look to prior decisions, the dictionary and common usage. . . . The word "substantial" is defined in the dictionary and generally means real, important, not illusive. This is also the ordinary usage of the word. The statute sufficiently informs the jury of the general types of injuries that are required to find a person guilty of [the specific offense].

> . . . .

> . . . We conclude that a substantial risk of death means more than just any risk of death but does not mean that death was likely. If there is a real hazard or danger of death, serious injury is established.

*Anderson*, 308 N.W.2d at 46–47 (citations omitted).

■ Section 726.6(1)(a) requires a showing of substantial risk to a child's physical health or safety. It does not require proof that the conduct was negligent or reckless, although such actions may create a substantial risk. The above discussion also makes it unnecessary to prove that the physical risk to a child's health or safety is likely. Rather a showing that the risk is

real or articulable will suffice. *See id.* at 47.

■ Our search of the dictionary may further help define this phrase as it applies to the crime of child endangerment. "Substantial" is defined as: "Not imaginary; true; real." American Heritage Dictionary 1213 (2d ed.1985). And "risk" is defined as: "The chance of injury, damage, or loss; danger or hazard . . . ." Black's Law Dictionary 1328 (7th ed.1999). Putting the case law and dictionary definitions together, the definition of "substantial risk" in the context of child endangerment is: The very real possibility of danger to a child's physical health or safety.

Anspach argues that just about any type of conduct where children are concerned can fall within that definition. However, because this is an as-applied challenge, the question is limited to whether the statute is void as applied to Anspach's actions. *See Hunter,* 550 N.W.2d at 465. "The fact the statute may be vague as applied to other factual scenarios is irrelevant to this analysis." *Id.*

Anspach drove his car nearly twenty miles an hour over the legal limit. Then, he tried to outrun police in an irresponsible manner. He did this with the knowledge that he had four small children of tender age scattered about in the cab of his truck who could very easily have been killed or seriously harmed by an accident or an extended car chase. While any one of these facts on its own may not be enough to create a substantial risk, the totality of the conduct would alert the ordinary citizen that his actions were placing these children's safety in articulable danger. Therefore, it is not unreasonable that Anspach's actions fall within those prohibited by section 726.6. The language is sufficient to alert the average person that such conduct is prohibited.

■ Anspach suggests that our interpretation will lead to arbitrary enforcement. He argues the State effectively bootstrapped his mere child seat violations, normally punishable only by fine, into a charge with a potential of eight years in prison. When there is sufficient evidence to charge a suspect with a particular crime, it does not matter that his conduct may also constitute a violation of a lesser offense with a lighter penalty. *State v. Caskey,* 539 N.W.2d 176, 177–78 (Iowa 1995). "When two statutory provisions are reconcilable, the prosecutor has discretion to choose what charges to file." *Id.* at 178. Not only did Anspach violate the child restraint ordinance, he was speeding and then tried to elude police. Given these additional facts, the application of this section to Anspach does not encourage arbitrary enforcement.

■ Further, the fact that the children's caretakers were not also charged with child endangerment for their role has no affect on Anspach's culpability or responsibility for creating the harm. As noted above, the decision to charge an individual is left to the discretion of the State. *Id.* Accordingly, "[w]hatever ambiguity may arguably exist at the edges of this statute," an ordinary person in these circumstances would have notice his actions were creating a substantial risk to the safety of his young passengers. *See Hunter,* 550 N.W.2d at 466.

B. The Sufficiency of the Evidence of Substantial Risk

■ Anspach argues that there was insufficient evidence to prove substantial risk beyond a reasonable doubt. The State of Iowa, as well as the City of Des Moines, has articulated that any time a child is placed in an applicable moving vehicle, without proper restraints, a safety risk is created. Iowa Code § 321.446(1),

(2); Des Moines, Iowa, Municipal Code ch. 114, art. X, div. 4, § 114–446 (2001). Although the mere violation of this Code section does not impute negligence to the driver nor would it be admissible in a civil case, it is a relevant factor to determine if a substantial risk is present in a criminal child endangerment case. *See* Iowa Code § 321.446(6). Also relevant are facts that a driver violates safe driving principles. *Stokes v. Lundeen,* 168 Or.App. 430, 7 P.3d 586, 591 (2000) ("All vehicle occupants, whether adults or children, are exposed to [a] risk of injury when a vehicle speeds . . . ." (citation omitted)).

We find there was sufficient evidence that Anspach's actions were creating a substantial risk to the safety of his young passengers. If he had gotten into an accident, which was a real possibility given his speeding, swerving, and attempts to elude police, these children could have been easily injured given their size and location in the truck. There was ample testimony from police and the women in the truck that Anspach's driving caused fear for life or injury. There was also testimony that the children were upset and crying when the officer approached the vehicle. As such, when evidence of the failure to properly secure young children in safety seats is combined with evidence of Anspach's driving conduct, sufficient evidence of child endangerment exists.

### C. The Applicability of Section 726.6(1)(a) to Anspach's Situation

■ This issue involves the argument that there was insufficient evidence of control to convict Anspach. We must decide then whether Anspach had "control" under the meaning of the statute.

Anspach certainly had control over how he drove the car and whether he sped. He made the decision to accelerate or swerve to get away from the police. As the owner of the vehicle, it was Anspach's sole right to decide who he allowed to be present in his truck. This control gave him the right to refuse to take the women on errands. Moreover, it is the operator's responsibility, regardless of relationship, to ensure passengers are properly secured. Iowa Code § 321.446(4). Anspach was in a position to dictate how the children would be secured in his truck.

Whether this is the type of control the statute contemplates is the question. Anspach argues that he did not have the right of control over the children because their guardians were present. Therefore, he maintains he cannot be guilty of child endangerment. We disagree. The definition of control is: "To exercise authority or dominating influence over . . . ." American Heritage Dictionary 319. Whatever control Ida and Carla had initially was surrendered to Anspach when they placed the children in his truck cab, got in the truck bed, and allowed him to drive. A driver of a car has complete control over where to drive, how fast to drive, and how to drive. Testimony indicated the women were screaming for Anspach to slow down, but he ignored their pleas. He was the only one in charge of the situation at this time; Ida and Carla were in no position to prevent his actions.

■ The statute clearly does not limit its reach to only those with custody of the child, *i.e.,* the child's parents, legal guardian, or babysitter. It was rewritten in 1985 to include those adults having "control" over the child as well. 1985 Iowa Acts ch. 180, § 3. The term control has a broader meaning than custody. *State v. Johnson,* 528 N.W.2d 638, 640–41 (Iowa 1995).

[A]n individual could have "control" over a child without also having ordinary custody of a child. "Control" only refers to the state of having restricting or govern-

ing power over someone, while "custody" implicates not only a power of oversight but also a responsibility for the care of an individual. Therefore, the reach of section 726.6 is broader than section 726.3 [which just talks about custody].

*Id.* at 641 (citation omitted). Here, Anspach had control over the instrumentality contributing to the risk to the children in the truck. As such, we agree with the district court that the meaning of control "applies to a person who has the ability to control the risk that the statute prohibits."

Further, the statute does not limit the applicability of the control element to only those times when a guardian or someone with custody is not present. *See State v. Friend,* —— N.W.2d ——, 2001 WL 355674 (Iowa Ct.App.2001). Recently, the Iowa Court of Appeals had occasion to address this issue under substantially similar facts. A grandfather brought his grandson to Iowa on a trip. While in Iowa, they accepted a ride from the child's uncle, Joel Friend. Friend's truck was pulled over by police, and he was arrested for driving under the influence of alcohol. He was charged both with an OWI and with child endangerment. Iowa Code §§ 321J.2(1)(a), 726.6(1)(a).

Under the child endangerment charge, Friend argued that with the custodial grandparent present, the element of control was inapplicable. Citing our decision in *Johnson,* the court of appeals recognized that the term "control" easily encompassed the "act of driving the vehicle in which [the] young nephew was a passenger. Although [the defendant] was not charged with overseeing [the child's] welfare ..., he was in control of the truck immediately before the officer stopped it." *Friend,* —— N.W.2d at ——, 2001 WL 355674 at *2. We agree that "a person need not have responsibility for a child to exert control over that child." *Id.* at ——, 2001 WL 355674 at *1.

In the 2001 session, the Iowa Legislature amended section 726.6 to include the phrase, "For the purposes of subsection 1, 'person having control over a child or a minor' means ... [a] person who operates a motor vehicle with a child ... or minor present in the vehicle." S.F. 63, 79th G.A. § 4 (Iowa 2001). Anspach argues this new language signifies the clear intent of the legislature to change the reach of the statute. He maintains the amendment is evidence that the version he was convicted under did not apply to motor vehicle operators. Because we do not believe the control element is ambiguous, we need not address this subsequent history. *See State v. Guzman–Juarez,* 591 N.W.2d 1, 3 (Iowa 1999). Nevertheless, we find this was a clarification of the law, not a change, and therefore, our conclusion would be the same.

In summary, Anspach has failed to prove section 726.6 has no constitutional basis as applied to his actions. His actions created a substantial risk to his young passengers' safety. Finally, Anspach was in control of his actions and the consequences of his driving. Therefore, he had control over the children in the truck as required by the statute. We affirm Anspach's conviction.

**AFFIRMED.**