**James F. COFFIN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 05–CM–752.

District of Columbia Court of Appeals.

Submitted Jan. 25, 2007.
Decided March 1, 2007.

David H. Stringer, appointed by the court, was on the brief, for appellant.

Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III, David B. Goodhand, and Michael A. Humphreys, Assistant United States Attorneys, filed a brief, for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and BELSON, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

We are confronted, for the first time, with the issue of whether an individual is subject to criminal liability under D.C.Code § 22–1101(b) (2006) when he drives in a dangerous manner with child passengers in the car. Appellant contends that there was insufficient evidence to support his conviction of two counts of attempted second-degree cruelty to children.[1] We conclude that there was ample evidence in the record to support the trial court's findings that appellant's conduct of erratically operating a motor vehicle, while admittedly impaired and while two unrestrained children accompanied him as passengers, created a grave risk of bodily injury to the minor occupants of his vehicle, and subjected appellant to criminal liability. We affirm.

## I.

The facts upon which the trial court relied were based in large part on the testimony of the government's witness Officer Gregg Goodman. Officer Goodman testified that on February 25, 2005, at approximately 9:00 p.m., he and another officer were on traffic patrol at the intersection of Blaine Street and Division Avenue, N.E., Washington, D.C., when they observed appellant run a stop sign. The officers noticed that appellant did not have his car headlights turned on and initiated their siren and emergency lights in an attempt to make a traffic stop, but appellant did not immediately pull over. Instead, he began to swerve back and forth across the yellow centerline. Appellant then made a sharp left turn onto Ames Street, N.E., but quickly aborted this plan and swerved to the left after he realized that he would be proceeding against the direction of traffic.

Appellant finally stopped at the intersection of Division and East Capitol Streets, N.E., two blocks from the initial intersection where the officers observed appellant run a stop sign. The officers exited their vehicle and approached appellant's car, and immediately noticed a "pit bull's head that came through the window," and two small children in the back seat.[2] The children did not have any seat belts on, and were not otherwise restrained by child safety seats.[3] Officer Goodman testified

---

1. D.C.Code § 22–1101(b) provides, in relevant part:

    (b) A person commits the crime of cruelty to children in the second degree if that person intentionally, knowingly, or recklessly:
    (1) Maltreats a child or engages in conduct which causes a grave risk of bodily injury to a child; or
    (2) Exposes a child, or aids and abets in exposing a child in any highway, street, field house, outhouse or other place, with intent to abandon the child.

2. Officer Goodman testified that before pulling appellant over, he could see the following:

    [T]here was a driver and then there was three smaller heads. Two of them were bouncing back and forth between the back seat and the front seat, and I could tell one of the heads was a dog. And they appeared to be going back and forth between the front seat, the back seat, and didn't appear to be restrained at all.

3. The officers noticed that appellant also did not have his seat belt on.

that he noticed a moderate odor of an alcoholic beverage coming from the vehicle, and later saw a clear cup with a brownish liquid sitting in the center console of the vehicle, prompting the officer to ask appellant if he had been drinking. Appellant admitted that he had consumed "a couple of beers" earlier in the day.

The officer then asked appellant to step out of the car. The officer could smell the odor of alcohol on appellant and noticed that his eyes were bloodshot and that his pupils appeared to be dilated. Based on these observations, the officer administered three field sobriety tests to appellant.[4] Appellant failed each test. As a result, appellant was arrested and transported to the police station where two intoxilyzer tests were administered. Appellant's intoxilyzer test results showed a blood alcohol level of 0.13 and 0.12 grams respectively. In the District of Columbia, a person having a blood alcohol level of .008 grams or higher is deemed intoxicated, and it is against the law for an intoxicated person to operate a motor vehicle.[5]

The appellant also testified on his own behalf. Appellant stated that the reason he did not immediately pull over for the police was because they often drive around with their lights on and there was no convenient place to pull over on the two lane road with parked cars. Appellant did not contest the results of the roadside sobriety tests, or subsequent intoxilyzer tests, which showed appellant's blood-alcohol level at least 1½ times the legal limit in the District of Columbia. Appellant admitted that "two minor children were in the backseat playing with a dog and were not restrained." Appellant stated that he initially buckled the children in seatbelts, and later realized that the children had

taken their seatbelts off, but he still continued to drive while impaired.

## II.

■ We review claims of insufficiency of evidence *de novo*, applying the same standard that the trial court applies in ruling on a motion for judgment of acquittal. *See Robinson v. United States*, 797 A.2d 698, 705 (D.C.2002); *United States v. Bamiduro*, 718 A.2d 547, 550 (D.C.1998). In doing so, we view the evidence in the light most favorable to the government, with due regard to the right of the trier of fact to weigh the evidence, determine the credibility of witnesses, and draw reasonable inferences from those facts. *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C. 2002), *cert. denied*, 536 U.S. 972, 122 S.Ct. 2692, 153 L.Ed.2d 861 (2002).

■ To prevail on his sufficiency of the evidence claim, appellant has the burden of establishing "that the government presented no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Mihas v. United States*, 618 A.2d 197, 200 (D.C.1992) (internal quotation marks and citations omitted). We conclude that appellant is unable to meet this burden.

This court has not previously addressed the issue of whether an individual is subject to criminal liability under D.C.Code § 22–1101(b) when he drives in a dangerous manner with child passengers in the car. While we have not previously addressed this question, other jurisdictions with similar child protection statutes have addressed precisely this issue and found criminal liability for driving dangerously with child passengers. For example, in *State v. Anspach*, 627 N.W.2d 227, 230

---

4. The officer conducted the horizontal gaze and nystagmus test, the walk and turn test, and the one leg stand test.

5. *See* D.C.Code § 50–2201.05(b)(1)(I) (2001).

(Iowa 2001), the Iowa Supreme Court affirmed a conviction of child endangerment where the defendant created a substantial risk of harm by driving recklessly with several unrestrained children in his car. The Iowa Supreme Court was faced, for the first time, with interpreting a child endangerment statute, very similar to our own, to determine whether appellant's "foolish" acts constituted the crime of child endangerment.[6] *Id.* The facts upon which the Iowa Supreme Court relied in interpreting their child endangerment statute revealed that Anspach was observed by police officers driving a truck at fifty-three miles per hour in a thirty-five miles per hour zone. Police signaled to Anspach to stop by flashing their lights, but rather than slowing down, appellant sped up. Anspach then made two sharp turns onto a side street and then into an alley before finally coming to an abrupt stop. When the police later asked Anspach why he did not heed to their flashing lights and immediately stop, "Anspach told the officer he was losing his license in three days and did not want to get caught again." *Id.* Once the police finally pulled Anspach over, they observed that the truck cab contained four small children, ranging from the ages of one to three years. The police could see that the one year old lay on the floor of the truck on top of garbage and debris, the two year olds were fastened with the same safety belt, and the three year old was completely unrestrained. *Id.*

Based on these facts, Anspach was charged with, *inter alia,* four counts of child endangerment. In affirming appellant's convictions, the Iowa Supreme Court dismissed appellant's argument that there was insufficient evidence to convict him of child endangerment and held:

> We find there was sufficient evidence that Anspach's actions were creating a substantial risk to the safety of his young passengers. If he had gotten into an accident, which was a real possibility given his speeding, swerving, and attempts to elude police, these children could have been easily injured given their size and location in the truck. There was ample testimony from police and the women in the truck that Anspach's driving caused fear for life or injury. There was also testimony that the children were upset and crying when the officer approached the vehicle. As such, when evidence of the failure to properly secure young children in safety seats is combined with evidence of Anspach's driving conduct, sufficient evidence of child endangerment exists.

*Anspach, supra,* 627 N.W.2d at 234.

Similarly, in *Snow v. Commonwealth,* 33 Va.App. 766, 537 S.E.2d 6, 11 (2000), the Virginia Court of Appeals affirmed a conviction of three counts of child abuse where the defendant was driving a stolen car at a speed of 112 m.p.h. with three child passengers.[7] Snow appealed his conviction for child abuse, contending that

---

6. The Iowa Child Endangerment statute in question, codified at Iowa Code § 726.6(1)(a) 1999, provides, in relevant part:
   1. A person who is the parent, guardian, or person having custody or control over a child ... commits child endangerment when the person ...
   a. Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

7. The Virginia child abuse statute at issue provides: "Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony." VA. CODE ANN. § 18.2–371.1(B)(1) (2006).

driving a motor vehicle at a high rate of speed was insufficient to constitute a willful act so gross, wanton, and culpable as to show a reckless disregard for human life, and come within the ambit of the child abuse statute. *Id.* at 7. The court disagreed however, and concluded:

> Based upon the facts before us, we cannot hold that the trial court erred in finding that appellant acted willfully in driving in the manner in which he did. This conclusion is particularly compelling in light of the fact that during most of the trip, appellant was being followed by a police cruiser with its emergency lights on, yet he did not pull over until the engine of the car was "blown" and two additional police cruisers were forced to join the chase. Furthermore, we find it reasonable for the fact finder to have rejected the conclusion that appellant would have had any reason to believe that driving at a speed of over 100 miles per hour in an attempt to evade police was not dangerous or unlawful activity. Accordingly, we find that under the circumstances of this case, the trial court did not err in finding appellant's actions to have been "willful" and "so gross, wanton and culpable as to show a reckless disregard for human life."

*Snow, supra,* 33 Va.App. at 775, 537 S.E.2d 6.

While these cases from other jurisdictions are not binding on us, they signal the fact that other jurisdictions, with similar child protection statutes, have embraced the notion that one may be found criminally liable for child abuse by engaging in reckless driving while transporting children. Given the similarity of the Iowa and Virginia statutes to our own, these cases provide some useful guidance.

## III.

The record supports the trial court's finding that the manner in which appellant operated his car on February 20, 2005 created a grave risk of bodily injury to his child passengers. Specifically, the evidence revealed that appellant had at least 1½ times the legal limit of alcohol in his bloodstream while driving with two unrestrained children in his vehicle. Appellant admitted that "two minor children were in the backseat playing with a dog and were not restrained." Appellant also admitted that he initially placed his two child passengers in seat belts, and although he later saw that the children were no longer restrained in the seat belts, but playing with the pit bull, he continued to drive because he "wasn't sure if they knew how to do it by themselves." Further, appellant did not contest the results of the roadside sobriety test, or the subsequent intoxilyzer tests, which showed appellant's blood-alcohol content was well above the legal limit in the District of Columbia. Moreover, he drove in a dangerous fashion, swerved across the yellow centerline and drove in the wrong direction down the street. The evidence also revealed that appellant operated his car without headlights and ran a stop sign. Appellant chose to operate a motor vehicle under these conditions. These facts provided ample support for the trial court's finding that appellant "intentionally, knowingly, or recklessly" created a grave risk of bodily injury to his two child passengers in violation of D.C.Code § 22–1101(b).

Appellant's argument that the evidence was insufficient to show that his actions were directed at the children, or that the children suffered any bodily injury, is without merit. Appellant's interpretation of D.C.Code § 22–1101(b) is inconsistent with the wording of the statute. The statute does not require, as appellant

contends, that a person's conduct be directed at a child or that the child suffer an injury. The statute only requires that the person "recklessly ... engage in conduct which causes grave risk of bodily injury to a child[.]" D.C.Code § 22–1101(b). A trier of fact reasonably could find that appellant's conduct in driving under the influence, driving with his headlights off although it was night, refusing to stop for police initially, swerving across the yellow line, all while small children frolicked in the car, was reckless. Further, the statute does not require the government to prove that the actor "intended" to cause a grave risk of injury. Instead, the government must prove that the actor intended to do the act that constitutes the offense. *See Lee v. United States*, 831 A.2d 378, 379 (D.C.2003) (because the government is not required to prove that the [appellant] intended to create a grave risk of bodily injury, the fact finder must "focus on the likelihood of injury rather than ... the degree of injury sustained").

We discern no error in the trial court's findings that appellant's act of driving with two unrestrained children, while intoxicated, knowingly and recklessly posed a grave risk of bodily injury to the children. For the foregoing reasons, we affirm.

*So ordered.*