# IN THE COURT OF APPEALS OF IOWA

No. 20-1062
Filed September 1, 2021


**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**BRIAN KEITH TAYLOR,**
　　　　Defendant-Appellant.
_____


Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.


Brian Taylor appeals his convictions for sexual abuse in the second degree and child endangerment. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Brian Taylor was convicted of eleven crimes for his actions with the minor children of his then-girlfriend. On appeal, he challenges the sufficiency of the evidence supporting his convictions for seven of those crimes[1]

## I. Background Facts and Proceedings.

The girlfriend has six children, born between 2006 and 2016.[2] Taylor and the girlfriend met in 2012, moved in together into a home in Vinton in 2013, and separated in May 2017. In July 2017, the girlfriend and her children moved to a home in Cedar Falls. The girlfriend and Taylor soon reconciled, and Taylor moved into the Cedar Falls home. In May 2018, Taylor, the girlfriend, and all six children left the Cedar Falls home and moved to Texas. Allegations Taylor abused the children in Iowa were reported to Texas authorities, which led to an investigation by Cedar Falls police and charges filed in Iowa.

Following a jury trial, Taylor was convicted of eleven crimes. He was convicted of one count of sexual abuse in the second degree (involving the oldest child), two counts of lascivious acts with a child (one count involving each of the oldest two children), two counts of indecent exposure (one count involving each of the oldest two children), and six counts of child endangerment (one count involving each of the six children). The court sentenced Taylor to a combination of concurrent and consecutive sentences that resulted in a term of incarceration not

---

[1] Taylor does not challenge his convictions for the other four crimes.
[2] Taylor is the father of the girlfriend's youngest child. Taylor is not the father of the oldest five children.

to exceed thirty-two years. Taylor appeals, arguing the evidence is insufficient to support the sexual-abuse and child-endangerment counts.[3]

## II. Standard of Review.

"We review the sufficiency of the evidence for correction of errors at law." *State v. Donahue*, 957 N.W.2d 1, 7 (Iowa 2021) (quoting *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018)). "We view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). "We determine evidence is sufficient when the record contains substantial evidence to support conviction." *Id.* "Substantial evidence exists when the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *Kelso-Christy*, 911 N.W.2d at 666).

---

[3] The State argues Taylor failed to preserve error on all issues presented on appeal. The State acknowledges Taylor preserved error on his challenge to the sexual-abuse count, but the State argues Taylor failed to properly argue the sufficiency of the evidence supporting the child-endangerment counts before the district court. Our review of the transcript shows Taylor uttered a brief evidentiary challenge to the child-endangerment counts in his oral motion for judgment for acquittal, and the parties' later arguments show the issue of whether Taylor's actions presented a "substantial risk" to the children was fully presented to the court. Thus, Taylor's challenge to the child-endangerment counts is preserved for our review. In contrast, Taylor's short and unsupported references in his brief to an improper directed verdict for the State and a request for a new trial based on a weight-of-the-evidence analysis are inadequate to present these issues for our review. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) ("[R]andom mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.").

## III.    Sufficiency of the Evidence.

### A.    Sexual Abuse in the Second Degree

To convict Taylor of sexual abuse in the second degree, the district court instructed the jury that the State must prove both of the following:

> 1. Between [July 1], 2017, and [the oldest child's twelfth birthday in] April, 2018, the defendant performed a sex act with [the oldest child].
> 2. The defendant performed the sex act while [the oldest child] was under the age of 12 years.

The oldest child testified to an incident when Taylor picked her up, held her "like a baby," and touched her vagina over her clothes. Taylor does not dispute this testimony provides substantial evidence to satisfy the requirement that he performed a sex act with the child. *See* Iowa Code § 702.17 (2017) (defining "sex act" to include "[c]ontact between the finger or hand of one person and the genitalia or anus of another person"); *Donahue*, 957 N.W.2d at 10–11 ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction."). However, Taylor challenges whether the evidence supports finding the child was under the age of twelve at the time of the sex act.

The oldest child testified the sex act occurred in the Cedar Falls home while Taylor lived with them. Taylor moved into the home in summer or autumn of 2017, the child's twelfth birthday occurred in April 2018, and everyone moved out of the home about one month later in May 2018. While the child could not pinpoint exactly when the sex act occurred during her testimony, she testified the sex act occurred during the school year while the weather was "warm." The child also testified that after the sex act, Taylor similarly tried to pick her up like a baby on later occasions, but she began resisting him and he eventually stopped. The

potential timeframe living in the house being mostly before the child's twelfth birthday in April and the child's testimony that the weather was "warm" during the sex act and that she started struggling when Taylor picked her up after the sex act all supports finding the sex act occurred while the child was under twelve years old.

Furthermore, the sex act occurred in the context of the child's testimony of Taylor engaging in many acts of sexual behavior towards her, some of which formed the basis of Taylor's other convictions. According to the child's testimony, Taylor showed pornography to the child. Taylor told the child to wear a sex toy. Taylor grabbed the child's buttocks. Taylor repeatedly exposed his penis to the child and masturbated in her presence, sometimes asking her to touch his penis. The child definitively testified this sexual behavior occurred in Cedar Falls before the child's twelfth birthday. Similarly, the second oldest child testified Taylor slapped her buttocks, exposed his penis to her, and showed her a sex toy while they lived in the Cedar Falls home. Considering the record as a whole, including the environment of Taylor directing sexual behavior at the children under age twelve, the evidence is sufficient for the jury to conclude the oldest children was under age twelve when Taylor performed a sex act with her. Therefore, we affirm his conviction for sexual abuse in the second degree.

## B. Child Endangerment

To convict Taylor of child endangerment, the district court instructed the jury the State must prove all of the following for each of the six children:

1. Between the 1st day of July, 2017, and the 30th day of April, 2018, the defendant was the parent, guardian, person having

custody or control of [the child] or a member of the household in which [the child] resided.
>     2. [The child] was under the age of fourteen years.
>     3. The defendant knowingly acted . . . [i]n a manner creating a substantial risk to the child's physical health or safety . . . .[4]

Taylor specifically challenges the evidence supporting the third element, that he knowingly created "a substantial risk to [each] child's physical health or safety." "A 'substantial risk' in the context of child endangerment is '[t]he very real possibility of danger to a child's physical health or safety.'" *State v. Folkers*, 941 N.W.2d 337, 339 (Iowa 2020) (alteration in original) (quoting *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001)).

The three oldest children and the girlfriend all testified about Taylor's extensive drug use in the home, specifically methamphetamine and marijuana use. A parent's drug use satisfies this third element if the State proves a "nexus between the drug use and the creation of a substantial risk of harm to the child." *Id.*; *accord In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016) (in a termination-of-parental-rights proceeding, stating "the mere fact of [drug] use does not establish adjudicatory harm" and "the State must establish a nexus between the father's cannabis use and an appreciable risk of adjudicatory harm").

The girlfriend testified she and Taylor "frequently" used drugs, often while the children were in and around the home. The girlfriend also testified their drug

---

[4] The instructions varied between the children and allowed different theories to satisfy element 3 for the different children, but element 3 could be satisfied as to all six children by proving Taylor "knowingly acted . . . [i]n a manner creating a substantial risk to the child's physical health or safety." Because the jury returned a general verdict and we must affirm a guilty verdict when substantial evidence supports any of the theories presented, we do not address the other theories for the different children. *See* Iowa Code § 814.28 (2019).

use affected their ability to care for the children. The record is thus replete with examples of Taylor's harmful actions and inactions that can be attributed to his drug use.

A law enforcement officer testified the use of drugs in a home, especially methamphetamine, can contaminate the home and harm children in the home. The girlfriend testified the drug use was confined to the adults' bedroom. However, the youngest child typically slept in this same bedroom where the adults used drugs. Furthermore, the oldest two children testified they were aware of the drug use in the home, as they found drugs and paraphernalia in the home and sometimes saw Taylor use drugs in front of them. One time, Taylor told the oldest child to try a white powder and then appeared to consume the powder himself when the child declined.

Along with Taylor's sexual abuse and misconduct described above, the three oldest children testified Taylor regularly hit their mother and the children. This abuse included hitting the children with a belt or throwing them into a wall. According to the oldest child, Taylor once forced two of the children to sit on the couch "all day" and hit one of them with a belt when he urinated himself after being denied the restroom. The adults told the children to cover bruises from the abuse, such as wearing long pants to cover bruising on the legs. The children were rarely allowed to play outside. When Taylor's fighting escalated, which happened "kind of often," the children stayed home from school because the adults "just didn't want [the children] to go."

The owner of the Cedar Falls home testified the home was in "terrible" condition after the family left, with human feces and urine "all over the house." The

oldest child testified the home had no electricity or heat at times during the winter because the adults failed to pay bills. The oldest child also testified they sometimes did not have enough to eat and the responsibility for preparing meals for the children often fell to the two oldest children using whatever food they could find.

This testimony about Taylor's drug use in the home, Taylor's abuse and misconduct in the home, and the deplorable conditions in the home all provide substantial evidence Taylor knowingly acted to create a substantial risk to all six children's health or safety and this substantial risk had a nexus with Taylor's drug use. Therefore, we affirm his convictions for child endangerment as to all six children.

**IV.    Conclusion**

There is sufficient evidence to support the jury's finding Taylor performed a sex act on the oldest child before her twelfth birthday and he created a substantial risk to the health and safety of all six children. Therefore, we affirm his convictions for sexual abuse in the second degree and child endangerment.

**AFFIRMED.**