# IN THE COURT OF APPEALS OF IOWA

No. 20-0990
Filed September 22, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHARLES ANDREW TEWES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, David C. Larson,
District Associate Judge.

The defendant challenges the sufficiency of the evidence to support his
conviction for child endangerment.  **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant
Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney
General, for appellee.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**GREER, Judge.**

Charles Tewes appeals his conviction of child endangerment, challenging the sufficiency of the evidence. Tewes disputes some of the district court's factual findings, arguing they are not supported by the evidence. And he claims the other facts do not meet the legal standard of creating a substantial risk to B.T.'s health or safety.

## I. Background Facts and Proceedings.

Tewes and his ex-wife, Jennifer, have two children, eleven-year-old T.T. and six-year-old B.T.[1] On June 14, 2019, Jennifer took the children to a local convenience store to hand off the boys to Tewes for his weekend parenting time. After Jennifer and the kids arrived, T.T. decided he did not want to spend the weekend with Tewes. Jennifer told Tewes and B.T. to have a good time but would not force T.T. to go. This made Tewes angry, and he started arguing with Jennifer and yelling at some store patrons.

Jennifer did not want to argue with Tewes and felt concerned about sending B.T. with him while he was exhibiting so much aggression. So she took B.T.'s hand, and she and the two boys started walking toward the store exit. Before they reached the door, Tewes grabbed B.T.'s free arm and pulled him in the opposite direction. According to one of the store patrons who testified at trial, Tewes was "squeezing hard enough to leave bruises on the kid" and B.T. was lifted off the ground from the pulling. The patron described the scene as "tug-of-war" with B.T.

---

[1] These were the children's ages as of the date of Tewes's trial, October 28, 2019, rather than the date of the incident on June 14.

as the rope. Tewes used his body to wedge between Jennifer and B.T., and Jennifer dropped B.T.'s hand.

After Jennifer released B.T., Tewes picked him up and spun away from Jennifer. While Tewes held B.T. by his bottom half, Jennifer grabbed hold of the top half of B.T.'s body. Each parent was holding part of B.T., who was aloft with his body parallel to the ground several feet above the tile floor. Then Tewes wrenched B.T. from Jennifer's grasp. When Jennifer reached for B.T. again, Tewes shoved her, causing her to take several steps.

The police were called, and Tewes was arrested. Tewes was later charged with child endangerment, in violation of Iowa Code section 726.6(1)(a) and (7) (2019).[2] Tewes elected to have a trial to the bench.

At trial, the State admitted into evidence a video (without sound) from the convenience store, which showed the entire interaction between Tewes, Jennifer, and the children. Additionally, Jennifer testified at trial and described Tewes's actions grabbing B.T.'s arm "very hard," "ripp[ing] [B.T.] away from [her]," and holding "him extremely tightly." Jennifer described B.T. "later confid[ing] in multiple people that his dad had tried to rip his arm off" and stating "his head hurt because [Tewes] was holding his head so hard." She testified he "was still pretty upset over it for quite some time" and was attending "counseling." One of the patron witnesses testified he thought it was a "traumatic incident" for "the children and

---

[2] Tewes was also charged with two counts of harassment in the second degree, third offense. The State dismissed one of the charges at trial, and the court acquitted Tewes of the other.

probably the ex-wife." T.T. can be seen (on the video) crying after Tewes shoved Jennifer.

The district court found Tewes guilty of child endangerment. In its written ruling, the court concluded:

> Charles Tewes physically assaulted [B.T.'s] mother in front of [B.T.] and during an argument with [B.T.'s] mother, Mr. Tewes grabbed [B.T.] by the arm, causing a small bruise. Immediately following the incident, [B.T.] was visibly upset and he has been attending mental health therapy to help deal with the situation.

Tewes appeals.

## II. Discussion.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). "If a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt, the evidence is substantial." *Id.* We review all evidence in the record, not just the inculpatory evidence, but we review it in the light most favorable to the State. *Id.* Where, as here, the defendant's criminal case was tried to the court, a motion for judgment of acquittal is not necessary to preserve error for appellate review. *See State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997).

For Tewes to be properly convicted, the State had the burden to prove:

> 1. On or about June 14, 2019, Charles Andrew Tewes was the parent of [B.T.]
> 2. [B.T.] was under the age of 14 years.
> 3. Mr. Tewes acted with knowledge that he was creating a substantial risk to [B.T.'s] physical, mental, or emotional health or safety.

Tewes disputes whether the third element was proved beyond a reasonable doubt, challenging some of the district court's fact findings and otherwise arguing his

actions did not rise to the level necessary to conclude he created a substantial risk to B.T.'s physical, mental, or emotional health or safety.

First, Tewes focuses on the district court's finding that he caused a bruise to B.T.'s arm when he grabbed him. We agree with Tewes that the evidence does not support the court's finding Tewes bruised B.T.'s arm when Tewes pulled him from Jennifer. As the video shows, Tewes grabbed B.T. by his right arm, and the bruise in the photograph is on B.T.'s left arm. And it was T.T., not B.T., who was visibly upset in the immediate aftermath. And yet, we are convinced substantial evidence supports Tewes's conviction for child endangerment.

Our supreme court has interpreted "substantial risk" to mean: "The very real possibility of danger to a child's physical, [mental, or emotional] health or safety." *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001). "[I]t [is] unnecessary to prove that the physical risk to a child's health or safety is likely." *Id.* at 232. "Rather a showing that the risk is real or articulable will suffice." *Id.* at 232–33. Even without causing the bruise on B.T.'s arm, Tewes pulled B.T.'s arm in the opposite direction. B.T. was traveling hard enough that it momentarily lifted him from the ground. Plus, Tewes's struggle with Jennifer to gain hold of B.T., during which the child was several feet above hard ground, put B.T.'s physical health and safety at risk.[3] *See State v. Davis*, No. 18-1487, 2020 WL 1310271, at *2 (Iowa Ct. App. Mar. 18, 2020) (finding substantial risk of mental and physical harm in child-endangerment case

---

[3] One eyewitness testified that when the child was lifted, he reached as high as Tewes's shoulder height. The eyewitnesses described feeling intimidated by Tewes's behavior as well.

where, among other behaviors, there was a risk of dropping the child during an assault).

And B.T.'s mental and emotional health were put at risk when Tewes, while holding B.T. in his arms, shoved Jennifer. Tewes minimizes the harm that could be caused to B.T. by seeing his father shove his mother after having his parents physically struggle over him,[4] arguing the facts here are not like those in *State v. Lee*, No. 17-0413, 2018 WL 1099273, at *3 (Iowa Ct. App. Feb. 21, 2018). In *Lee*, the defendant

> "kicked the babysitters out" of the house and began yelling at [the child's mother]. Her five-year-old child was asleep in the bedroom upstairs, and the complaining witness testified Lee was aware of the child's location. While she testified she blacked out during some of the assault, she estimated the assault lasted "a really long time," "for an hour or two." The five-year-old woke up and witnessed what was happening. The complaining witness testified she believed her screams and cries for help woke the child. The complaining witness remembered the child saying, "Leave mommy alone" and "trying to grab [her] and like jumped onto [her]." The complaining witness testified that Lee "tried to just describ[e] the situation, 'Oh, mommy and me got in a fight, and clean her off.'" The child then took the complaining witness to the bathroom, and used a washcloth to clean the blood off her face and arms. The complaining witness further testified that her five-year-old child "is terrified of a lot of things now, men in general. [The child] doesn't trust anybody, or, um, [the child is] still in counseling over it."

2018 WL 1099273, at *3. While the level of assault in this case does not rise to that in *Lee*, in both cases, the aggressor was aware a child was present and witness to the assault. *Id.* And both the complaining witness in *Lee* and Jennifer testified that the witnessing child was upset by the incident afterward and attended

---

[4] Tewes disputes the reliability of Jennifer's testimony that B.T. reported to others that Tewes "tried to rip his arm off," but we view the evidence in the light most favorable to the State. And the statement suggests the incident—even if not actually physically injuring B.T.—left an impression on him.

counseling. *Id.* Like in *Lee,* we believe "it is . . . reasonable . . . to conclude there is a 'real or articulable' risk or a 'very real possibility of danger' to a child's mental, physical or emotional health or safety from witnessing the child's mother assaulted." *Id.*; *see also In re L.H.*, 904 N.W.2d 145, 153 (Iowa 2017) ("Further, '[c]hildren from violent homes may also experience impaired social competence and even post-traumatic stress disorder.'" (alteration in original) (quoting Amy B. Levin, Comment, *Child Witnesses of Domestic Violence: How Should Judges Apply the Best Interests of the Child Standard in Custody and Visitation Cases Involving Domestic Violence?*, 47 UCLA L. Rev. 813, 832–33 (2000))).

We affirm Tewes's conviction of child endangerment.

**AFFIRMED.**