# IN THE COURT OF APPEALS OF IOWA

No. 23-0100
Filed February 7, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRIDGETT DENISE KUEBLER,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Dallas County, Erica Crisp, District Associate Judge.

    A defendant appeals her convictions for operating while intoxicated, second offense, and child endangerment. **AFFIRMED.**

    Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

    Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

    Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

A passenger in a car traveling west on Interstate 235 (I-235) in Des Moines called 911 to report a driver "swerving all over" with a "little kid in the front seat." The driver was Bridgett Kuebler, and the little kid was her six-year-old nephew. She was stopped by police and charged with operating while intoxicated, second offense, and child endangerment. After a jury trial, Kuebler was convicted of those charges. She appeals, challenging the sufficiency of the evidence supporting both convictions. In doing so, Kuebler asks us to step into the jury's shoes as the fact finder. Because that is not our role, and we find substantial evidence supporting the jury's verdicts, we affirm Kuebler's convictions.

## I.    Background Facts and Proceedings

On July 31, 2022—the one-year anniversary of her sister's death—Kuebler's friends surprised her with brunch at a restaurant in Des Moines that served bottomless Bloody Marys and mimosas. They got to the restaurant around 11:00 a.m. During their meal, Kuebler thought she had around four or five drinks, but she said they weren't very strong. She and her friends left the restaurant around noon.

When Kuebler got back home, she waited for her nephew to be dropped off by his mother, Maria, so that they could go visit his father in Fort Dodge. Maria got to Kuebler's house around 3:00 p.m. with the child. She went inside, talked to Kuebler for fifteen or twenty minutes, and then left the child with her. Maria did not see any signs that Kuebler was intoxicated. Kuebler packed up a few things to take with her, grabbed some spring rolls to eat on the way, and headed out the door. The child jumped in the front seat of the car. At first, Kuebler said that she

told him to get in the back. But then she thought that because they were sharing food and stopping to pick up her fiancé in West Des Moines, the child would be safe in the front until they got there. Kuebler made sure the child was buckled up, although she did not have a booster seat for him, and left her house.

Kuebler got onto I-235, traveling west from Altoona toward her fiancé's place. As Kuebler went by the 42nd Street exit, her driving was noticed by Jessica Scuffham—a passenger in a car that had just merged onto the interstate. Scuffham testified that Kuebler's car was "just kind of all over," veering from "the far left lane driving on the shoulder, and then back in the left lane . . . and cars were just trying to get out of" the way. As they passed by Kuebler's car, Scuffham saw "a little boy in the front seat. . . . His head was barely above kind of where the window starts." Once she saw the child, Scuffham decided to call 911 to report Kuebler's driving.

During the call, Scuffham described Kuebler's driving as she watched her on the interstate: "Oh now she's speeding way up. . . . Oh shit! She's going off the road. . . . . She was in the grass and got back on." And then about thirty seconds later, "Oh shit! She just hit the bridge. . . ." When the dispatcher asked whether the car crashed, Scuffham replied, "No. She bounced back into the road, but she almost hit a car." About a minute later, Scuffham told the dispatcher that the car was driving on the shoulder but got back on the interstate, cutting off a semi-truck in the process. She also said that it looked like the car hit concrete medians several times. Past the Booneville exit, Scuffham reported that Kuebler made a U-turn on a highway median to head eastbound back toward West Des Moines.

After making the illegal U-turn, Kuebler was pulled over by West Des Moines Police Officer Molly Brooker at 5:04 p.m. As Officer Brooker approached Kuebler's car, she noticed that Kuebler had food spilled on her lap and the child's seatbelt was fastened across his neck. She also noticed that Kuebler's eyes were bloodshot, her speech was slurred, and her responses to questions were slow.

Not long after Officer Brooker stopped Kuebler, Iowa State Trooper Brady Clary arrived. Trooper Clary made the same observations as Officer Brooker, though neither smelled alcohol when they were talking to Kuebler in her car. They also did not see any damage to Kuebler's car that would show she collided with concrete medians. After Kuebler handed Trooper Clary a receipt instead of her registration, he decided to bring her back to his car. When Kuebler got out of her car, she didn't seem to notice the food spilled on her lap. Once Kuebler was in his car, Trooper Clary noticed the smell of alcohol on her breath. She denied drinking any alcohol that day, though the trooper observed her "speech was slurred and kind of thick-tongued." Kuebler did admit that she made a U-turn but explained it was because she had missed her exit.

Trooper Clary then began field sobriety testing. Kuebler passed the vertical-gaze-nystagmus test but not the horizontal one, showing "a lack of smooth pursuit in both eyes and distinct and sustained nystagmus in both eyes, so four out of six clues of impairment," according to Trooper Clary. He also saw a lack of convergence in her left eye. During the test, Kuebler stopped Trooper Clary to tell him that he "had a really neat fingerprint," which he thought was strange and showed her lack of focus. After Kuebler passed the Modified Romberg test, which asks a person to tilt their head back and estimate the passage of thirty seconds,

the trooper decided to move her off the interstate to conduct the rest of the tests. Trooper Clary saw four out of eight possible clues of impairment during the walk-and-turn test and three out of four on the one-leg-stand test. Kuebler also had trouble completing the preliminary breath test, blowing into it four times before a reading was registered. Officer Brooker, who was observing the tests, testified "[s]ober people don't take it multiple times."

Trooper Clary arrested Kuebler and transported her to the police station. Once there, he asked her to take a DataMaster breath test. After Kuebler waited for an attorney for more than an hour, she took the test at 7:40 p.m.—more than two hours after she was stopped—and blew a .059.[1] She was charged with operating while intoxicated, second offense, and child endangerment. A jury convicted Kuebler of both charges. She appeals.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). In doing so, we view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (citation omitted). "Substantial evidence exists when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.'" *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021) (citation omitted).

---

[1] *Cf.* Iowa Code § 321J.2(12)(a) (2022) ("The alcohol concentration established by the results of an analysis of a specimen of the defendant's . . . breath . . . withdrawn within two hours after the defendant was driving . . . is presumed to be the alcohol concentration at the time of driving . . . .").

### III.    Analysis

To find Kuebler guilty of operating while intoxicated, the jury was instructed that the State was required to prove both of the following: "1. On or about July 31, 2022, Ms. Kuebler operated a motor vehicle.  2. At that time, Ms. Kuebler was under the influence of alcohol."  The jury was further instructed that

> [a] person is "under the influence" when, by drinking liquor and/or beer, one or more of the following is true:
> 1. Her reason or mental ability has been affected.
> 2. Her judgment is impaired.
> 3. Her emotions are visibly excited.
> 4. She has, to any extent, lost control of bodily actions or motions.

Kuebler's conduct and demeanor were accordingly important considerations in determining whether she was operating while intoxicated.  *See State v. White*, No. 19-0784, 2020 WL 3569581, at *2 (Iowa Ct. App. July 1, 2020); *see also State v. Orr*, No. 05-1864, 2006 WL 2419198, at *2 (Iowa Ct. App. Aug. 23, 2006) ("A person may be found guilty under section 321J.2(1)(a) in the absence of admissible evidence from chemical tests.").

Within this framework, Kuebler claims the "State did not prove any of these factors by substantial evidence."  She offers different explanations for the signs of impairment observed by the 911 caller and the officers at the scene, including that she missed her exit because of a song she heard on the radio that had played at her sister's funeral, "traffic conditions made it more difficult for [her] to make that exit," and the caller's claim that she hit a median was "outlandish and easily disproven."  But the "existence of evidence which might support a different verdict does not negate the existence of substantial evidence sufficient to support the verdict in this case."  *State v. Brandt*, No. 05-0368, 2006 WL 334245, at *3 (Iowa

Ct. App. Feb. 15, 2006) (citing *State v. Frake*, 450 N.W.2d 817, 818–19 (Iowa 1990)).

That substantial evidence includes the observations of both Officer Brooker and Trooper Clary that Kuebler's eyes were bloodshot, watery, and droopy, and her speech was slurred or "thick-tongued." They also noticed that her responses were slow and delayed. And Trooper Clary smelled alcohol on her breath when he brought her back to his car. So while Kuebler claims the videos from the stop show that she was calm and cooperative, "asked reasonable and logical questions, and could speak coherently," the in-person observations by Officer Brooker and Trooper Clary are better indicators of these signs of impairment. *See State v. Walter*, No. 21-0446, 2022 WL 610571, at *3 (Iowa Ct. App. Mar. 2, 2022). Based on those observations, both of the trained officers concluded that Kuebler was under the influence of alcohol. *See State v. Shannon*, No. 17-0717, 2018 WL 1182561, at *2 (Iowa Ct. App. Mar. 7, 2018) (finding that an officer's observation of signs of impairment provides substantial evidence the subject was under the influence); *State v. Blake*, No. 15-1771, 2016 WL 4384253, at *2 (Iowa Ct. App. Aug. 17, 2016) ("The court may also consider an officer's opinion regarding another person's sobriety.").

Trooper Clary also concluded that Kuebler failed several of the field sobriety tests. *See State v. Bunce*, No. 13-1024, 2014 WL 1494961, at *2 (Iowa Ct. App. Apr. 16, 2014) ("Field sobriety tests allow officers to assess whether a driver is under the influence of alcohol."). Kuebler argues the videos do not show her losing her balance, stopping while walking, or keeping her arms up, like the trooper

testified.[2]  The jury, however, was able to watch the videos and draw its own conclusions.  It is not our role on appeal "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence," as Kuebler would have us do here.  *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (citation omitted).  At any rate, the videos support Trooper Clary's testimony about Kuebler's performance on the tests.  *See Walter*, 2022 WL 610571, at *3 (discussing video evidence supporting a deputy's observations of the defendant's speech and mannerisms).

We have also considered Kuebler's admission that she performed a U-turn on the interstate—an illegal and dangerous maneuver according to Trooper Clary—with a six-year-old child in the front seat.  *See State v. Van Cleave*, No. 12-0041, 2013 WL 3458192, at *3 (Iowa Ct. App. July 10, 2013) (stating a person's "manner of driving is relevant" in determining whether the person is under the influence of alcohol).  And although she initially denied having anything to drink that day, Kuebler eventually admitted that she had four or five Bloody Marys and mimosas at lunch with her friends.  *See id.* (finding the defendant's admission that "she had been drinking, the strong odor of an alcoholic beverage about her, and

---

[2] Kuebler also argues for the first time on appeal that the horizontal-gaze-nystagmus test was improperly administered because Trooper Clary did not hold his finger still for the required time.  But the only video exhibit with a view of the test being given is the inward facing dashcam video from Trooper Clary's car.  This video is not clear, and it is not obvious whether Trooper Clary moved his finger too quickly.  In any event, as the State points out, "any inconsistencies in administering the field sobriety tests affect the weight to be accorded to the results, rather than their admissibility."  *State v. Quintero-Labrada*, No. 19-0544, 2020 WL 6482726, at *2 (Iowa Ct. App. Nov. 4, 2020) (citation omitted).

her watery and bloodshot eyes indicated that her impairment was the result of consumption of alcohol").

Viewing this evidence in the light most favorable to the verdict, we find substantial evidence from which a rational fact finder could conclude Kuebler was under the influence of alcohol while operating a motor vehicle.

The same evidence supports the jury's guilty verdict on the child-endangerment charge. For this offense, the jury was instructed that the State had to prove all of the following:

> 1. On or about July 31, 2022, Ms. Kuebler was the person having custody or control over [the child].
> 2. [The child] was under the age of fourteen.
> 3. Ms. Kuebler acted with knowledge that she was creating a substantial risk to [the child's] physical, mental, or emotional health or safety.

Kuebler only challenges the final element, arguing that because she "honestly believed that she was safe to operate a motor vehicle," she did not "knowingly act in a way that created a substantial risk of harm."

But Kuebler admitted that she had four or five alcoholic drinks before driving on the interstate with her nephew. *See State v. Schrock*, No. 09-0631, 2010 WL 624911, at *2 (Iowa Ct. App. Feb. 24, 2010) (finding the defendant knowingly acted in a manner that created a substantial risk to his son after he admitted drinking three or four beers before taking his son on an ATV ride). Whether Kuebler thought she was drunk or not, two law enforcement officials immediately noticed signs of impairment when she was stopped. And Kuebler must have been concerned about her level of intoxication because she at first denied drinking that day. *See State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005) ("[T]he defendant's

knowledge may be proved not only by direct evidence, but also by reasonable inferences drawn from the circumstances surrounding the accident."). She also, in Trooper Clary's opinion, tried to cheat the preliminary breath test by blowing into it incorrectly. A reasonable inference from this evidence is that Kuebler knew she might not have been safe to drive. *See id.* ("It is the appreciation of the risk to the child or minor posed by one's conduct that creates criminal culpability under this statute.").

While Kuebler agreed on cross-examination that her nephew would have been safer in the back seat, on appeal she argues that letting him sit up front did not create a substantial risk to his safety. The jury was instructed that in Iowa, there "is no law requiring a child who is at least six years of age to sit in the back seat of a vehicle." But the instruction also stated that front seat occupants of a vehicle, including "a child that is at least six years of age," "shall each wear a properly adjusted and fastened safety belt or safety harness any time the vehicle is in forward motion on a street or highway in this state." Both Officer Brooker and Trooper Clary stated the child's safety belt was not properly adjusted because it was over his neck. Officer Brooker explained the danger: "if they were in an accident, that seat belt . . . would have clamped down on his neck, or it wouldn't have stopped him at all from sliding out from underneath it or going over it." *See State v. Anspach*, 627 N.W.2d 227, 234 (Iowa 2001) (finding sufficient evidence of child endangerment when the defendant drove recklessly with young children who were not properly secured in safety seats).

Regardless of the child's position in the car, a rational fact finder could conclude under this record that erratically driving a motor vehicle on an interstate

at high speeds while under the influence of an alcoholic beverage created a substantial risk to the child's safety. *See Schrock*, 2010 WL 624911, at *2; *see also State v. Caskey*, 539 N.W.2d 176, 177 (Iowa 1995) (stating that a defendant who drove "her car with the children in it while she was intoxicated was neglectful of her natural and legal duty to not expose them to the hazard of injury or death" in a prosecution for neglect of a dependent person); *State v. Friend*, 630 N.W.2d 843, 845 n.1 (Iowa Ct. App. 2001) (quoting *People v. Cruz*, 576 N.Y.S.2d 978, 981 (N.Y. Crim. Ct. 1991) for the proposition that "'it takes little imagination' to recognize harm to children implicit in driving them while intoxicated").

For these reasons, we conclude the evidence was sufficient to support Kuebler's convictions for operating while intoxicated, second offense, and child endangerment.

**AFFIRMED.**