# IN THE SUPREME COURT OF IOWA

No. 18–1999

Filed April 3, 2020

**STATE OF IOWA,**

Appellee,

vs.

**BRENNA FOLKERS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Brook K. Jacobsen, District Associate Judge.

The defendant challenges the sufficiency of the evidence to support her conviction of child endangerment. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith (until withdrawal) and then Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Brian Williams, County Attorney, and Michael S.A. Hudson, Assistant County Attorney, for appellee.

**McDONALD, Justice.**

At approximately six o'clock in the morning on a January day, local fire and police departments responded to a fire at the mobile home of Brenna Folkers and her husband Richard Wilson. By the time the police arrived, Wilson had extinguished the fire with an extinguisher, but the house had filled with smoke. Folkers, Wilson, and their two-year-old son had escaped from the home but not before exposure to the smoke. Folkers and her son, who was covered with black soot, were taken to the hospital for medical treatment. When the police spoke with Folkers and Wilson, the police learned Folkers and Wilson smoked marijuana and hash oil in the home. With Wilson's consent, officers searched the home later that day. They found a cache of illegal drugs and paraphernalia.

The State charged Folkers with child endangerment, in violation of Iowa Code section 726.6(1)(*a*) (2017). As relevant here, the State was required to prove Folkers had custody of her child and she knowingly acted in a manner that created a substantial risk to her child's physical health or safety. After a bench trial, the district court found the State met its burden of production and persuasion and found Folkers guilty as charged. Folkers appealed her conviction, contending there was insufficient evidence to support the conviction. We transferred the case to the court of appeals, and the court of appeals affirmed Folkers's conviction. We granted Folkers's application for further review.

Folkers challenges the sufficiency of the evidence to support her conviction. Our review is for the correction of legal error. *See State v. Petithory*, 702 N.W.2d 854, 856 (Iowa 2005). With respect to factual findings, this is a deferential standard of review. "The district court's findings of guilt are binding on appeal if supported by substantial evidence. Evidence is substantial if it would convince a rational trier of

fact the defendant is guilty beyond a reasonable doubt." *State v. Hearn*, 797 N.W.2d 577, 579–80 (Iowa 2011) (quoting *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008)). We consider all of the evidence in the light most favorable to the verdict, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record. *See id.* at 580; *State v. Leckington*, 713 N.W.2d 208, 212–13 (Iowa 2006).

When the evidence is viewed in the light most favorable to the verdict, the record reveals the following. Folkers, Wilson, and their two-year-old child lived in a small mobile home. The mobile home was filled with clutter. When officers searched the home after the fire, they found hash oil, several bags of marijuana, marijuana blunts, marijuana containers with residue, a glass marijuana pipe, and two glass bongs all in a cabinet back by the parents' bedroom. Officers also found a large butane torch—approximately one and a half feet tall—on the kitchen counter by the front door near the child's bedroom. Folkers and Wilson used the oversized butane torch "to light cigarettes and illegal drugs."

On the night before the fire, Wilson smoked hash oil around seven o'clock and again around midnight. He testified he smoked the hash oil alone and in the bathroom of the home. However, he did admit he previously told "law enforcement that [he] had smoked [the] hash oil with [his] . . . wife, Ms. Folkers." The fire started at some point after two o'clock in the morning. The fire ignited on the floor of the front room near the child's bedroom. Folkers was asleep at the time. The police "ascertained that . . . the cause of the fire was the butane torch utilized to smoke cigarettes and illegal narcotics." The police based their determination on the suspicious nature of the fire, including the lack of any source "around that area that could have ignited the fire," and Wilson's statements. One

officer testified, "According to Mr. Wilson he said that they -- he had smoked some hash oil, and it was on fire." Wilson denied hash oil was the cause of the fire. Wilson testified he smoked a cigarette at approximately two o'clock in the morning using the butane torch as a lighter.

We first address the question of whether the circumstances created a substantial risk to the child's physical health and safety. "Substantial risk is not defined in section 726.6. The phrase substantial risk, however, has been heavily defined in other contexts and enjoys a fairly ascertainable meaning." *State v. Anspach*, 627 N.W.2d 227, 232 (Iowa 2001). A "substantial risk" in the context of child endangerment is "[t]he very real possibility of danger to a child's physical health or safety." *Id.* at 233. In the context of parental drug use, the State must show some nexus between the drug use and the creation of a substantial risk of harm to the child. *See, e.g., In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016) (stating the mere fact of drug use does not, in and of itself, establish a risk of harm to a child and the State must prove a nexus between parental use and risk of harm to a child). The risk does not have to be likely, probable, or statistically significant. It just needs to be real or identifiable as opposed to speculative or conjectural. *See State v. Schlitter*, 881 N.W.2d 380, 390 (Iowa 2016).

Here, there is substantial evidence of a nexus between the parents' use of illegal drugs in the home and the creation of a substantial risk to the child's health and safety due to the risk of fire. The evidence showed the parents knowingly possessed hash oil, marijuana, and paraphernalia in the home and smoked the drugs in the home. They used an oversized butane torch to smoke illegal drugs and cigarettes in the home. The police concluded the torch was used in the middle of the night or early morning hours. The police concluded the fire started when the oversized torch was

used to light hash oil. The police based their determination, in part, on Wilson's admission "he had smoked some hash oil, and it was on fire."

While Wilson denied this at trial, we view the evidence in the light most favorable to the verdict. In addition, one officer testified regarding the risks created in manufacturing hash oil. These risks appear to be well known. *See* Ken Helm & Logan Leichtman, *Implementation of Oregon's Measure 91 in the State Legislature*, 52 Willamette L. Rev. 1, 23–24 (2015) (stating the manufacture of butane hash oil "requires volatile chemicals that can be dangerous when used outside of a properly controlled environment" and "[t]he fact that these products are in high demand and not generally available to all consumers has led to attempts at home production, with sometimes disastrous results"). As one medical resource explained,

> Because [butane hash oil or] BHO production is uncomplicated, requires few resources, and is the subject of countless instructional videos on social media Web sites, recreational users have created BHO at home in a process colloquially called "blasting." . . . The process of creating these products is extremely dangerous because butane is flammable and volatile, and a number of fires, explosions, and severe burns have been attributed to home blasting. . . . [T]he safety risks have been described as comparable to those of manufacturing methamphetamine.

John M. Strogner & Bryan Lee Miller, *Assessing the Dangers of "Dabbing": Mere Marijuana or Harmful New Trend?*, 136 Pediatrics Perspectives, 1, 1 (July 2015).

Regardless, Wilson and Folkers's conduct created a substantial risk of harm to the child due to the risk of fire. The fire originated in the front room only feet from the sleeping child's bedroom. The child escaped the home with his parents, but he was covered in soot and "literally black from head to toe." He "smelled extremely smoky," and the first responders took him to the hospital for medical attention. The risk is heightened here

because the child was two years old at the time. He was mobile but lacked the capability to self-protect. *See, e.g.*, *Petithory*, 702 N.W.2d at 859 (noting children of a "tender age . . . [cannot] be expected to protect themselves from the dangers and hazards to which" they are exposed); *State v. Janes*, No. 16–1590, 2018 WL 347534, at *2 (Iowa Ct. App. Jan. 10, 2018) (noting a two-year-old child lacks the ability to self-protect). The fire risk posed to the child's health and safety by the home environment was real and actualized in this case.

We next address whether there was substantial evidence to support the finding Folkers knowingly created the risk of these harms to her child. With respect to intent, child endangerment is a general intent crime. *See State v. Benson*, 919 N.W.2d 237, 244–45 (Iowa 2018) (stating "the district court was correct to instruct the jury that child endangerment is a general-intent crime"). The State need not prove the defendant acted with desire to achieve the prohibited result. *See id.* at 244. Instead, the State need only show that "the prohibited result may reasonably be expected to follow" from the circumstances presented. *Id.* (quoting *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010)). "[I]t is the appreciation of the risk to the child or minor posed by one's conduct that creates criminal culpability under this statute." *State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005). "[T]he defendant's knowledge may be proved not only by direct evidence, but also by reasonable inferences drawn from the circumstances surrounding the accident." *Id.*

We conclude there is substantial evidence in support of the district court's verdict. The evidence showed Folkers knowingly possessed illegal hash oil, marijuana, and paraphernalia. She smoked drugs in the home with Wilson and was aware Wilson smoked drugs in the home, sometimes using the large butane torch. Folkers's failure to remove the child from

the physical environment where drugs were being smoked with an oversized butane torch is sufficient to establish Folkers had knowledge she had created or allowed her child to remain in a physical environment that posed a substantial risk to her child's physical health and safety. *See id.* at 431 ("That is all the State was required to prove: defendant's knowledge that the children were in a position of substantial risk.").

For these reasons, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**